**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DENNIS HILL,

    Defendant.

No. 09-CV-68-LRR

**ORDER**

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III. SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV. STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*V.  RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *4*

*VI. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *A.   Defendant's Failure to Comply with Local Rules* . . . . . . . . . . . . . *6*
    *B.   Defendant's Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *1.   Amount of the debt* . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *2.   Penalty charges* . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *3.   Cancellation of debt* . . . . . . . . . . . . . . . . . . . . . . . *9*
    *C.   Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*I. INTRODUCTION*

The matter before the court is the government's "Motion for Summary Judgment" ("Motion") (docket no. 11).

*II. PROCEDURAL BACKGROUND*

On May 15, 2009, the government filed a Complaint (docket no. 1). In the

Complaint, the government alleges that Defendant Dennis Hill has defaulted on student loans and seeks a judgment for the amounts owed. Defendant appears pro se in the instant action. On July 20, 2009, Defendant filed an Answer (docket no. 4) in which he denied the substance of the Complaint.

On January 15, 2010, the government filed the Motion. On February 10, 2010, Defendant filed a Resistance (docket no. 17). On February 24, 2010, the government filed a Reply (docket no. 19). On February 26, 2010, Defendant filed a "Response to Government's Reply Brief to Defendant's Resistance to Summary Judgment" ("Response") (docket no. 21).

Neither side requests oral argument on the Motion and the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court holds that it has federal question jurisdiction over the instant action because the United States filed the Complaint. *See* 28 U.S.C. § 1345 ("[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States[.]").

### IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v.*

2

*Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. RELEVANT FACTUAL BACKGROUND[1]

Between March 20, 1988 and June 25, 1990, Defendant executed several promissory notes to obtain student loans to attend St. Louis University and Southern Illinois University. On March 23, 1994, Defendant signed a "Loan Consolidation Application and Promissory Note." Government's Appendix ("Gov't. App'x") (docket no. 11-3), at 15. On April 14, 1994, Defendant's student loans were consolidated with a "total loan payoff" amount of $24,014.18. *Id.* at 17. Pursuant to a repayment schedule, Defendant was to begin making monthly payments of $198.00 on August 3, 1994, with the final payment due on May 3, 2014. Defendant has defaulted on his student loan payments.

As of October 8, 2001, A "Federal Direct Consolidation Loan Verification" reflected the "total payoff amount" of Defendant's loan was $37,218.15. *Id.* at 19. On February 19, 2002, Aman Collection Services, Inc. ("ACS") notified Defendant that Sallie Mae Guarantee Services ("Sallie Mae") had assigned Defendant's loan to ACS for collection. ACS's letter indicated a balance of $38,160.12, "plus accruing interest." *Id.* at 20.

In March of 2002, Defendant responded to ACS's letter. Defendant stated that he "NEVER REFUSED TO PAY ON THIS LOAN." *Id.* at 21 (emphasis in original). However, Defendant objected to certain collection costs because he believed they were "arbitrarily and capriciously added to the amount owed" and "had nothing to do with the cost of collections." *Id.*

On March 28, 2002, Sallie Mae responded to Defendant's letter. Sallie Mae explained how and why collection costs were assessed. Sallie Mae stated that the "balance of [Defendant's] defaulted loan(s) was $38,370.51[,]" which included "outstanding

---

[1] Defendant did not respond to the government's Statement of Material Facts (docket no. 11-2). Accordingly, the court deems these facts admitted. *See* LR 56.b. ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").

principal, accrued interest, and collection costs." *Id.* at 23.  Sallie Mae also informed Defendant that approximately $5.26 in interest accrued daily on the loan.

On June 11, 2002, Defendant wrote ACS again and objected to the assessment of collection charges.  Defendant stated that he only agreed to pay "actual" collection costs and that he believed certain collection charges did not reflect actual costs incurred. *Id.* at 29.

On July 2, 2002, the United States Department of Education ("Department") Office of Student Financial Assistance sent Defendant a letter.  In the letter, the Department summarized the history of Defendant's loan and noted that Defendant did not feel responsible for his debt because of collection costs.  The Department stated that "[t]his office has no authority to waive any of your account balance.  We have not seen appropriate documentation from you to prove your account balance is not correct." *Id.*

On July 1, 2003, Sallie Mae sent Defendant a letter in which it attempted to "outline the ability of the [creditor] to assess collection costs to [Defendant's] account and to pay these costs upon default of the note." *Id.* at 30.  Sallie Mae explained that collection costs were 18.5% of the loan amount.  Sallie Mae stated that "the balance of [Defendant's] defaulted loan(s) was $41,307.57[,]" which included "outstanding principal, accrued interest, and collection costs." *Id.* at 31.  Sallie Mae again informed Defendant that approximately $5.26 in interest accrued daily on the loan.

The Defendant is currently in default of his repayment obligations on the consolidated loan.  As of February 25, 2009, the Department's records showed that Defendant owed $42,148.41 on the consolidated loan.  This amount consists of $23,996.94 in principal and $18,151.47 in interest.  Interest accrues on the principal at the rate of 8% per annum.

## VI. ANALYSIS

The government alleges that Defendant owes the United States $23,996.94 in

principal and $18,151.47 in interest through February 25, 2009. The government also seeks prejudgment interest at the annual rate of 8% and post-judgment interest from the date of judgment. The government does not seek the collection costs and charges associated with Defendant's loan.

The court finds that the government has satisfied its burden to show that it is entitled to the relief sought in the instant action. The government submitted a "Certificate of Indebtedness" ("Certificate") prepared by the Department and dated April 30, 2009. Certificate of Indebtedness (docket no. 1-2), at 1. The Certificate reflects that, on March 23, 1994, Defendant executed a promissory note to secure a consolidation loan. The loan was "guaranteed by United Student Aid Funds, Inc., and then reinsured by the Department[.]" *Id.* Defendant later "defaulted on the obligation . . ., and the holder filed a claim on the loan guarantee." *Id.* United Student Aid Funds paid the loan holder's claim and the Department then reimbursed United Student Aid Funds. United Student Aid Funds was unable to collect the full amount due and "assigned its right and title to the loan to the Department." *Id.* "Since assignment of the loan, the Department has credited a total of $0.00 in payments from all sources . . . to the balance." *Id.* The Certificate reflects that, as of February 25, 2009, Defendant owed the United States $23,996.94 in principal and $18,151.47 in interest.

### *A. Defendant's Failure to Comply with Local Rules*

Defendant failed to comply with the Local Rules. A party resisting a motion for summary must file, in addition to a brief, "[a] response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact[.]" LR 56.b.2. "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." LR 56.b. Because Defendant failed to respond to the government's Statement of Material Facts, all of the government's Statement of Material

Facts are deemed admitted.

## B. *Defendant's Arguments*

Defendant resists the Motion on three grounds. First, he objects to the amount of the debt and argues that he made loan payments that are not reflected in the balance owed. Second, he objects to the assessment of penalty charges. Third, Defendant argues that he attempted to pay the "undisputed balance" and that the loan holder's rejection of his offer "cancelled" the debt. Resistance at 2. The court shall address each of these arguments, in turn.

### 1. *Amount of the debt*

Defendant argues that he "paid some $4800, in payments, payments, which the [government] or their agents never recorded." Resistance at 1. Defendant also contends that the government "failed to credit over $9,000 in payments[.]" Defendant's Statement of Material Facts (docket no. 17-1), at ¶ 2. The government argues that this contention is not material to the Motion because "[D]efendant is asserting he made payments totaling $9,000 prior to the student loan consolidation which took place in 1994." Government's Reply to Defendant's Statement of Material Facts (docket no. 19-1), at ¶ 2. The government contends the alleged payments are not relevant because "[t]he government is suing on the default of payments made pursuant to the Loan Consolidation Application and Promissory Note." Reply at 1.

In support of this contention, Defendant cites documentation relevant to certain loan payments and collection efforts in 1993. *See* Defendant's Exhibits 1-6 (docket no. 17-1 at 5-10). Defendant executed the Loan Consolidation Application and Promissory Note on March 23, 1994 and his student loans were consolidated on April 14, 1994. Accordingly, any payments relevant to the loan at issue prior to the consolidation were accounted for as of April 14, 1994, when Defendant's loans were consolidated. In the instant action, the government seeks only the amounts due pursuant to the Loan

7

Consolidation Application and Promissory Note. Thus, payments made in 1993 are not material to the instant action.

### 2. *Penalty charges*

Defendant objects to the assessment of penalties because "[p]enalties are not mentioned or permitted in the contract." Resistance at 1. He also argues that "[p]enalties were used by the student loan industry to force, to extort, funds from debtors and to prevent debtors from refinancing the loan to obtain better financing unless they submit to paying amounts that are not in fact owed, were never spent, they were not costs, and were simply a punishment for becoming unemployed." *Id*. However, Defendant acknowledges that the government "is not even attempting to collect the penalties with this action[.]" *Id*. Nonetheless, Defendant argues that the penalties harmed him because "the interest charges the [government] seeks to collect are higher because [Defendant chose] not to be a victim of extortion, [Defendant] was prohibited from obtaining lower interest rates." *Id*. In other words, Defendant contends he was unable to refinance his loan at a lower interest rate because he refused to pay the penalties.

Defendant concedes that the government does not seek to recover penalties or collection costs in the instant action. Accordingly, Defendant's dispute with certain penalties charged by various entities is not material. The court also notes that the Loan Consolidation Application and Promissory Note expressly permits late charges and collection costs. Defendant agreed to pay "all charges and other costs, including the statutorily authorized fees of an outside attorney and court costs that are permitted by federal law and regulations for the collection of this loan[.]" Gov't. App'x at 16. Defendant also agreed that, "[i]f this loan is referred for collection to any agency, [Defendant] will pay all charges, collection and other costs." *Id*.

Defendant cites no legal authority for the proposition that he should be excused from paying interest due to his inability to refinance his loan. Further, the only evidence

Defendant offers of his inability to refinance the loan is his Affidavit, in which he states "I could not refinance my loan until I paid penalties[,]" and a letter from a collection agency dated November 24, 2008, which reflected $10,137.96 in "penalty charges." Defendant's Exhibit 7 (docket no. 17-1), at 11. However, the letter does not relate in any way to refinancing the loan. The letter is merely an attempt by the collection agency to collect the debt and inform Defendant of certain programs to help him meet his repayment obligations. Defendant sets forth no evidence to show that he attempted to refinance his loan or that any such attempts were turned down because of his refusal to pay certain penalties.

The court finds that the penalties questioned by Defendant are not material to the Motion. Further, Defendant's argument is unsupported in law and in fact. Accordingly, the court shall not consider this argument in its resolution of the Motion.

### *3. Cancellation of debt*

Defendant contends that, while the loan was in default, he made "several attempts to pay what [he] felt was owe[d]." Resistance at 2. He asserts that "[t]he attempt of the [D]efendant to pay the complete undisputed balance was rejected." *Id*. Defendant maintains that the rejection of "reasonable payment at a reasonable time" cancelled the debt. *Id*.

Defendant states that "on July 9, 2002 at 12:25 CST, Vicki Blake, who identified herself as an employee of United Student Aid Funds, did refuse payment on this loan." Defendant's Statement of Material Facts at ¶ 5. In support of this statement, Defendant offers a letter dated August 12, 2002, from Defendant to Allied Interstate, Inc. In the letter, Defendant stated that Vicki Blake, an employee of United Student Aid Funds, refused payment on the loan. Defendant also stated in the letter that United Student Aid Funds had violated federal law and that their refusal of his payment "legally discharged the debt." Defendant's Exhibit 8 (docket no. 17-1), at 12. Defendant also states in his

9

Affidavit that "when reasonable payment was attempted to be made, and then refused, [Blake] in effect canceled the undisputed portion of the debt." Def. Affidavit (docket no. 17-1), at 4, ¶ 12. Defendant states that he "made several other attempts to settle this dispute." Defendant's Statement of Material Facts at ¶ 6. In support of this statement, Defendant offers a letter dated June 3, 2002 from Defendant to Allied Interstate, Inc. In the letter, Defendant stated:

> You asked what it would take to settle; ALL PARTIES AGREEING THAT $22,000[] IS THE CORRECT AMOUNT OWED AND ROLLING THAT INTO THE WILLIAM FORD PROGRAM. No one wins.

Gov't. App'x at 25 (emphasis in original).

Defendant's assertions that he offered a "reasonable payment" and that some portion of the debt was "discharged" or "canceled" are legal conclusions and therefore not admissible evidence. *See Murphy v. Mo. Dep't. of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (stating that court may only consider "admissible evidence" and must "disregard portions of affidavits and depositions that . . . purport[] to state legal conclusions as fact"). The court also notes that, rather than a legitimate offer to pay some amount of the debt, Defendant's purported "offer" appears to be simply an attempt to dispute the amount owed.

To the extent Defendant may have offered to pay some amount of the debt, the creditor had no obligation to accept less than the amount due, and its refusal to do so was a valid rejection of Defendant's purported offer. *See Olson v. Wilson & Co.*, 58 N.W.2d 381, 385 (Iowa 1953) ("To constitute a valid accord and satisfaction, not only must it be shown that the debtor gave the amount in satisfaction, *but that it was accepted by the creditor as such*.") (emphasis added); *McHose v. Fed. Deposit Ins. Corp.*, 882 F.2d 1311, 1313, n.3 (8th Cir. 1989) ("Accord and satisfaction is a means of discharging a contractual obligation *by agreement of the parties* to render and accept a different and substituted

10

performance as full satisfaction of the preexisting claim.") (emphasis added); 29 Williston on Contracts § 73:29 (4th ed.) ("[I]t must appear that the creditor agrees to accept the payment in full satisfaction of the debt, so that it may be said that both parties . . . understand that the acceptance of the sum offered is in full satisfaction of all debts owed by the debtor."). The creditor was under no obligation to accept Defendant's purported offers. It chose not to do so and the debt was not waived, canceled or discharged as a result.

*C. Summary*

The court finds that the government has carried its burden to show a lack of a genuine issue for trial. Defendant is in default of his student loan obligations and the court finds that Defendant's arguments are without merit. Accordingly, the court shall grant the Motion.

*VII. CONCLUSION*

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

(1) The Motion (docket no. 11) is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** in favor of the government in the amount of $42,148.41, with pre-judgment interest calculated at a rate of 8% per annum from February 26, 2009 until the date of judgment and post-judgment interest at the current legal rate pursuant to 28 U.S.C. § 1961(a); and

(3) The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 29th day of March, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA